UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| COUNTRY MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 4:13-cv-1476-SPM |
| OMICRON CAPITAL, LLC | ) ) | |
| and | ) ) | |
| RICHARD SADDLER, | ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This case is before the Court on the Motion for Summary Judgment filed by Plaintiff

Country Mutual Insurance Company. (Doc. 51). The parties have consented to the jurisdiction of

the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Doc. 18). For

the reasons stated below, the motion will be granted.

## I.  FACTUAL BACKGROUND[1]

This action concerns a dispute over whether Plaintiff Country Mutual Insurance

Company ("Country Mutual") is obligated under the terms of an insurance policy to defend and

provide indemnity to Defendant Omicron Capital, LLC ("Omicron") and its owner, Defendant

---

[1] These facts are taken from Country Mutual's Statement of Uncontroverted Facts (Doc. 51-1) and the exhibits cited therein, viewed in the light most favorable to Defendants. Although Saddler objected to the characterization of these facts as "uncontroverted" because Defendants denied several of the facts in their Answer, Saddler did not cite any evidence in support of his contention that the facts were controverted.

Richard Saddler (collectively, "Defendants"), with regard to a state court lawsuit filed against Defendants.

**A.      The Insurance Policy**

In mid-July 2012, Saddler contacted Ruth Husbands, an insurance agent who sells insurance policies on behalf of Country Mutual. Saddler inquired about obtaining professional liability insurance or errors and omissions insurance, but Ms. Husbands told him that neither she nor Country Mutual wrote policies with such coverage. On July 29, 2012, Saddler signed an application for a business owners liability insurance policy from Country Mutual. The application did not contain an application for professional liability insurance or errors and omissions insurance. The "Liability" section of the application listed a $2,000,000 aggregate limit in the box labeled "Bodily Injury and Property Damage," but there was no amount listed in the box labeled "Professional Liability." (Doc. 51-3, at p. 2).

On July 30, 2012, Country Mutual issued Policy Number AM 9132271 (the "Policy") to Defendants. The Policy stated, "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage', or 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages."[2] However, on August 15, 2012, Country Mutual sent Saddler and Ms. Husbands a cancellation notice stating that the Policy was cancelled effective October 17, 2012. Country Mutual's underwriting department told Ms. Husbands that Country Mutual could not write a business owners liability policy for Omicron or Saddler but that it would bind coverage for 65 days to allow them to find alternate coverage. On August 17, 2012, Ms. Husbands personally delivered a copy of the Policy to Saddler at his home. At that

---

[2] The Policy's coverage provisions, exclusions, and definitions are addressed in more detail below.

meeting, Saddler asked Ms. Husbands whether the Policy would cover a situation where Omicron took a client's money for services and a dispute arose as to whether or not that money had to be returned to the client when the services were not performed. Ms. Husbands explained that the Policy did not cover that type of loss.

Saddler and Omicron paid the initial premium for the Policy by check in August 2012, but the check was returned for insufficient funds. Country Mutual sent a notice to Saddler informing him of the returned check and requesting payment for the premium for the 65 days of insurance provided by Country Mutual. No premium was ever paid for the Policy. In December 2012, a third-party debt collector sent Saddler a collection notice. Saddler called Ms. Husbands and demanded that the collection notice be rescinded because the Policy did not provide him the coverage he wanted. Ms. Husbands told Saddler that Country Mutual would be willing to forego the unpaid premium if Saddler would agree to rescind the Policy effective July 30, 2012. Saddler orally agreed, and Ms. Husband sent him a "Commercial Change Request Form" indicating that the Policy was cancelled effective July 30, 2012, for the reason, "Client never need policy." (Doc. 51-9). The form is not signed by Saddler.

### B.    The PJP Lawsuit

On November 27, 2012, PJP Enterprises, Inc. ("PJP") filed a complaint against Saddler and Omicron in a state court in Wyoming (the "PJP lawsuit"). (Doc. 51-2). PJP alleged that Saddler and Omicron held themselves out as loan brokers and that on August 8, 2012, PJP entered a contract with Omicron under which Omicron agreed to assist PJP in finding financing for its business. PJP alleged that under the terms of the contract, PJP wired $75,000 to Omicron on August 21, 2012, which was to be held in escrow to pay for third-party services to be performed in connection with arranging the financing. PJP also alleged that under the terms of

the contract, the $75,000 was to be returned to PJP in the event that that the contract was terminated and the funds had not been used to pay for third-party services for PJP. PJP alleged that Omicron did not use the $75,000 for third-party services, that Omicron failed to provide financing for PJP, that PJP terminated the contract, and that Omicron improperly refused to return any of the $75,000. PJP further alleged that after it demanded return of the money, Defendants intentionally forged and changed a copy of the contract to remove the provision stating that the $75,000 was refundable and to add a provision stating that Omicron would be paid the $75,000 even if it failed to provide financing. PJP brought claims of breach of contract, unjust enrichment, and fraud against Defendants.

In its Amended Complaint, Country Mutual seeks a declaration that the Policy does not provide coverage for any of the allegations contained in the PJP lawsuit, that Country Mutual has no duty to defend or pay for defense costs for any of the allegations contained in the PJP lawsuit, and that Defendants have no right to indemnity for any of the allegations contained in the PJP lawsuit. Defendants have filed six counterclaims against Country Mutual: reformation of the Policy on grounds of mutual mistake; breach of written contract; vexatious refusal to pay under the written contract; breach of oral contract of insurance; vexatious refusal to pay under the oral contract; and negligent failure to procure insurance.

In the instant motion, Country Mutual seeks summary judgment in its favor on its declaratory judgment claim and each of Defendants' counterclaims. Saddler, proceeding *pro se*, has filed a response to the motion and an objection to Country Mutual's Statement of

Uncontroverted Facts. (Docs. 55 & 56). Omicron has not responded to the motion for summary judgment.[3]

## II.     LEGAL STANDARD FOR SUMMARY JUDGMENT

The Court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial responsibility of informing the court of the basis of its motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the non-moving party must then set forth affirmative evidence from which a jury might return a verdict in his or her favor. *Anderson*, 477 U.S. at 256-57. The nonmoving party "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256. "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007).

---

[3] When the Amended Complaint and Counterclaims were filed, Defendants were both represented by counsel. However, on April 29, 2014, the Court granted Defendants' counsel's motion to withdraw. (Doc. 24). Since then, Saddler has been proceeding *pro se*, and Omicron has been unrepresented. The Court has repeatedly advised Omicron that, as a business entity, it is not permitted to proceed without counsel; however, Omicron has not obtained substitute counsel. In addition, since July 2014, Saddler has been in the custody and control of the Federal Bureau of Prisons.

In considering a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences must be drawn in favor of the nonmoving party. *Peebles v. Potter*, 354 F.3d 761, 765 (8th Cir. 2004). The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

## III.   DISCUSSION

### A.  Country Mutual's Claim for Declaratory Relief

Country Mutual first asks the Court to grant summary judgment on its claim seeking a declaration that the Policy does not require it to defend or indemnify Defendants with regard to the allegations in the PJP lawsuit.

Under Missouri law, which applies in this diversity case, "An insurer owes two distinct duties to its insured: a duty to indemnify and a duty to defend." *Allen v. Cont'l W. Ins. Co.*, 436 S.W.3d 548, 552 (Mo. 2014). The insurer's duty to defend is "broader than its duty to indemnify" and arises "when there is a potential or possible liability to pay based on the facts at the outset of the case." *Id.* at 552 (quotation marks omitted). "In determining whether an insurer has a duty to defend, the Court first compares the policy language with the allegations in the petition from the underlying lawsuit. If the underlying petition alleges facts that give rise to a claim potentially covered by the policy, the insurer has a duty to defend." *Id.* In addition, the insurer "has a duty to defend if facts that are known to the insurer, or that are reasonably apparent to the insurer, at the commencement of the suit establish a potential for coverage." *Id.* However, "An insurer does not have a duty to defend a suit where the petition upon its face alleges a state of facts which fail to bring the case within the coverage of the policy." *Trainwreck West Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 42 (Mo. Ct. App. 2007) (quotation marks

omitted). Generally, "'where there is no duty to defend, there is no duty to indemnify.'" *Brand v. Kansas City Gastroenterology*, 414 S.W.3d 546, 556 (Mo. Ct. App. 2013) (quoting *Am. States Ins. Co. v. Herman C. Kempker Constr. Co.*,71 S.W.3d 232, 236 (Mo. Ct. App. 2002)); *see also Fischer v. First Am. Title Ins. Co.*, 388 S.W.3d 181, 188 (Mo. Ct. App. 2012).

It is well settled that in interpreting an insurance policy, the Court must apply general rules of contract construction. *See Todd v. Mo. United Sch. Ins. Council*, 223 S.W.3d 156, 160 (Mo. 2007). The Court must give the policy's terms their ordinary meaning, unless it is clear from the policy that the parties intended an alternate meaning. *Gavan v. Bituminous Cas. Corp.*, 242 S.W.3d 718, 720 (Mo. 2008).

Country Mutual argues that the PJP lawsuit does not contain allegations that give rise to any claims that potentially fall within the Policy's coverage provisions. The relevant coverage provisions are as follows:

**SECTION II – LIABILITY**
**A.     Coverages**
      **1.     Business Liability**
            **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

            **b.**     This insurance applies:

            **(1)**     To "bodily injury" and "property damage" only if:
                **(a)**     The "bodily injury" or "property

> damage" is caused by an "occurrence" that takes place in the "coverage territory". . . .
>
> **(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

(Doc. 51-4, at p. 64).

None of the allegations in the PJP lawsuit relate in any way to "bodily injury" or to "personal and advertising injury" as those terms are defined in the Policy.[4] The allegations may involve "property damage," which is defined to include "loss of use of tangible property that is not physically injured." (Doc. 51-4, at 78).[5] However, even assuming, *arguendo*, that PJP's allegations involve "property damage," they do not give rise to a claim potentially covered by the Policy, because they do not involve property damage "caused by an 'occurrence.'" An "occurrence" is defined in the Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 51-4, at p. 78). The Policy does not define "accident," but Missouri courts have held that the term "accident" has a common meaning in the context of a commercial liability policy:

---

[4] "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Doc. 51-4, at p. 76). PJP alleges no facts related to bodily injury, sickness, or disease.

"Personal and advertising injury" is defined in the Policy as injury arising out of one or more of the following offenses: false arrest, detention or imprisonment; malicious prosecution; wrongful eviction, entry, or invasion of the right of private occupancy; publication of material that slanders or libels a person or organization; publication of material that violates a person's right to privacy; the use of another's advertising idea; or infringement on copyright or trade dress. (Doc. 51-4, at p. 78). PJP alleges no facts related to these offenses.

[5] The Policy does not define "tangible property," and at least some courts have found that money may be "tangible property" for purposes of an insurance policy. *See Hortica-Florists' Mut. Ins. Co. v. Pittman Nursery Corp.*, 729 F.3d 846, 856-57 (8th Cir. 2013). Thus, PJP's loss of use of the $75,000 it wired to Omicron could arguably be considered a "loss of use of tangible property" and thus could arguably be considered property damage. Neither party addresses this issue.

> An event that takes place without one's foresight or expectation; an undesigned, sudden and unexpected event. Hence, often, an undesigned and unforeseen occurrence of an afflictive or unfortunate character; a mishap resulting in injury to a person or damage to a thing; a casualty; as, to die by an accident.

*Am. States Ins. Co. v. Mathis*, 974 S.W.2d 647, 650 (Mo. Ct. App. 1998) (quoting *West v. Jacobs*, 790 S.W.2d 475, 477 (Mo. Ct. App. 1990)).

Courts have held that "[u]nder this definition breaches of contract are not 'accidents' or 'occurrences.'" *Mathis*, 974 S.W.2d at 650 (citing cases). In *Mathis*, for example, the court stated:

> The cause of [the plaintiff's loss in the underlying suit] was [the insured's] failure to construct the ducts according to contract specifications. Such a breach of a defined contractual duty cannot fall within the term "accident." Performance of its contract according to the terms specified therein was within [the insured]'s control and management and its failure to perform cannot be described as an undesigned or unexpected event.

*Id.* at 650. *See also West*, 790 S.W.2d at 477-78 (insurer had no duty to defend against breach of lease claims because they did not fall within this definition of "accident" and therefore were not "occurrences" within the meaning of a liability policy); *Secura Ins. v. Horizon Plumbing, Inc.* 670 F.3d 857, 862-63 (8th Cir. 2012) (applying Missouri law) (insurer had no duty to defend against breach of contract claim because the insured's "performance of the contract according to its terms was within its control and management and its failure to perform cannot be described as an undesigned or unexpected event") (internal quotation marks omitted).

As in the cases above, the allegations in the PJP lawsuit did not involve any undesigned, sudden, or unforeseen event that could be considered an "accident" or "occurrence." The first two claims in the PJP lawsuit, breach of contract and unjust enrichment, are based entirely on Defendants' alleged breach of their defined contractual duty to return the $75,000 to PJP. Defendants' nonperformance of that contractual duty was entirely within their control and cannot

be described as an "accident" or an "occurrence" under the Policy. *See West*, 790 S.W.2d at 477-78; *Mathis*, 974 S.W.2d at 650.

The allegations in PJP's third claim, fraud, also do not involve an "occurrence." That claim is based on the allegation that Defendants intentionally forged a copy of the contract to avoid performing their contractual duties. Such acts of intentional wrongdoing and fraud are also not "accidents" within any reasonable meaning of that term, and therefore they are not "occurrences" within the meaning of the Policy's coverage provisions. *See Hartford Ins. Co. of the Midwest v. Wyllie*, 396 F. Supp. 2d 1033, 1038 (E.D. Mo. 2005) (holding that allegations of fraudulent misrepresentations did not involve an "occurrence" where that term was defined as it is here; stating, "Fraud, as an intentional act, is not an accident which happens without intention"); *Cincinnati Ins. Co. v. Meramec Valley Bank*, 259 F. Supp. 2d 922, 928 (E.D. Mo. 2003) (fraud claim is not the result of an "accident" or "occurrence" under Missouri law).

Finally, even assuming *arguendo* that these claims could somehow be deemed to arise from an "occurrence," two coverage exclusions cited by Country Mutual make it clear that the Policy does not provide coverage with respect to PJP's allegations. First, PJP's allegations of breach of contract and unjust enrichment fall within an exclusion for property damage "for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." (Doc. 51-4, at p. 66).[6] Second, PJP's allegations of fraud fall within an exclusion for

---

[6] Certain specific types of contracts (leases, sidetrack agreements, easements, license agreements, obligations to indemnify a municipality, and elevator maintenance agreements) do not fall within this exclusion (Doc. 51-4, at p. 98). However, those types of contracts are not at issue in the PJP lawsuit.

property damage "expected or intended from the standpoint of the insured." (Doc. 51-4, at p. 66).[7]

In his opposition brief, Saddler offers no alternative interpretation of the language of the Policy and cites no other provisions that show that the Policy does provide coverage for PJP's allegations. His sole argument appears to be that the Policy, as written, does not represent the agreement of the parties. That contention will be addressed below, in the context of Defendants' counterclaims for reformation of the Policy and for breach of an oral contract of insurance.

For all of the above reasons, the petition in the PJP lawsuit "upon its face alleges a state of facts which fail to bring the case within the coverage of the policy" as it is written. *See Trainwreck West*, 235 S.W.3d at 42. Moreover, Defendants offered no evidence that Country Mutual was aware of any facts (not alleged in the PJP lawsuit) at the commencement of the PJP lawsuit that would have established a potential for coverage. Thus, the undisputed facts demonstrate that Country Mutual has no duty under the Policy, as written, to defend against the allegations in the PJP lawsuit or to indemnify Defendants as to PJP's claims. Country Mutual is therefore entitled to summary judgment on its claim for declaratory relief.

---

[7] The Court further notes that it appears that all of PJP's allegations fall within an exclusion for property damage "caused by the rendering or failure to render any professional service." (Doc. 51-4, at p. 69). Indeed, Defendants appear to concede that PJP's allegations involve Defendants' "professional services," because their counterclaims are largely directed toward asking the Court to find that Country Mutual is obligated to cover claims "arising out of defendants' rendering of professional services to clients." *See* Doc. 8, ¶¶ 17, 27, 28, 42. However, because neither party discusses the applicability of this exclusion, and because it is not immediately apparent from the language of the Policy whether the loan brokerage services Defendants agreed to provide are "professional services," the Court does not base its holding on this exclusion.

### B. Defendants' Counterclaim for Reformation Based on Mutual Mistake (Count I)

In Count I of their Counterclaim, Defendants seek reformation of the written Policy on the ground of mutual mistake. They ask the Court to reform the Policy so that it includes professional liability/errors and omissions coverage that would apply to claims made against Defendants arising out of their rendering of professional services to clients.

"Reformation of an instrument is proper when it is shown by clear, cogent and convincing evidence that the instrument fails to reflect a valid underlying agreement between the parties due to fraud, mutual mistake, or such other grounds as will satisfy the requirements for equitable relief." *United Postal Sav. Ass'n v. Norbob Enters., Inc.*, 792 S.W.2d 898, 901 (Mo. Ct. App. 1990). "'For reformation on grounds of mistake, the primary factual issues to be established are the existence of a prior agreement and mutual mistake.'" *Black & Veatch Corp. v. Wellington Syndicate*, 302 S.W.3d 114, 126 (Mo. Ct. App. 2009) (quoting *Everhart v. Westmoreland*, 898 S.W.2d 634, 637 (Mo. Ct. App. 1995)). "'The mistake must be mutual and common to both parties and must reveal that both parties did what neither intended. The party seeking reformation must show that the writing fails to accurately set forth the terms of the actual agreement or fails to incorporate the parties' true prior intentions.'" *Id.*

To succeed on their counterclaim for reformation, Defendants would have to show that that both they and Ms. Husbands intended and agreed that Ms. Husbands was procuring for them a policy that included coverage for claims against Defendants arising out of their rendering of professional services to clients, but that the Policy as written failed to reflect that agreement. However, according to Ms. Husbands' uncontroverted affidavit, Ms. Husbands expressly told Saddler that she could *not* obtain professional liability insurance or errors and omissions insurance for Defendants. In addition, the "Liability" section of the insurance application Saddler

signed on July 29, 2012 lists a $2,000,000 aggregate limit in the box labeled "Bodily Injury and Property Damage," but lists no amount in the box labeled "Professional Liability." (Doc. 51-3, at p. 2). The uncontroverted affidavit of Ms. Husbands also shows that on August 17, 2012, Saddler asked whether the Policy would cover a situation where Omicron took a client's money for services and a dispute arose as to whether or not that money had to be returned to the client when the services were not performed, and Ms. Husbands explained that the Policy did not cover that type of loss.

Saddler states in his objection to Country Mutual's statement of facts that the statements in Ms. Husbands' affidavit are inconsistent with the transcripts of telephone conversations between Saddler, Ms. Husbands, her supervisor, and Country Mutual's corporate claims counsel. However, Saddler cites no evidence of such transcripts. Saddler also notes that in his Answer, he denied many of the facts that form the basis of Country Mutual's summary judgment motion. However, at the summary judgment stage, the nonmoving party "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. A party's unsworn and unsupported allegations do not constitute competent evidence that can be used to defeat a motion for summary judgment. *See Risdal v. Nixon*, 589 F. App'x. 801, 803 (8th Cir. 2014) (holding that the district court erred by considering a *pro se* plaintiff's unsworn statements, made at a telephone hearing, in denying the defendants' motion for summary judgment); *Tweeton v. Frandrup*, 287 F. App'x 541, 541 (8th Cir. 2008) (stating that to defeat summary judgment, the plaintiff "was required to offer evidence countering defendants' supporting affidavits and other evidence"); *Beyer v. Firstar Bank, N.A.*, 447 F.3d 1106, 1108 (8th Cir. 2006) (affirming grant of summary judgment where the plaintiff relied on his pleadings and did not submit an affidavit or any

evidence from which a reasonable jury could conclude that he had shown one of the elements of his claims); *Metzsh v. Avaya, Inc.*, 159 F. App'x 736, 737 (8th Cir. 2005) ("[The *pro se* plaintiff's] repeated references on appeal to her unverified complaint are unavailing, because only a verified complaint is the equivalent of an affidavit for purposes of summary judgment."); *Williams v. Donahoe*, No. 4:13-CV-1150 CAS, 2014 WL 6083133, at *3 (Nov. 13, 2014) (refusing to consider plaintiff's unsworn statements for purposes of summary judgment).

Because the undisputed evidence shows that Ms. Husbands did not agree to procure for Defendants a policy that obligated Country Mutual to provide professional liability or errors and omissions coverage that would apply to claims made against Defendants arising out of their rendering of professional services to clients, Defendants are not entitled to reformation, and Country Mutual is entitled to summary judgment on Count I of Defendants' Counterclaim.

### C. Defendants' Counterclaim for Breach of Written Contract of Insurance (Count II)

In Count II of their counterclaim, Defendants assert that Country Mutual breached the Policy by refusing to provide a defense and indemnity to Defendants with regard to the PJP lawsuit. Under Missouri law, "A plaintiff seeking to establish a prima facie case of insurance coverage must show that: (1) the insurer issued its policy to the insured, (2) the insured paid the premium, (3) a loss was caused by a peril the policy insures against, and (4) the insured gave notice of the loss to the insurer as required by the terms of the policy." *Wright v. Blevins*, 380 S.W.3d 8, 11 (Mo. Ct. App. 2012) (citing *Valentine–Radford, Inc. v. Am. Motorists Ins. Co.*, 990 S.W.2d 47, 51 (Mo. Ct. App. 1999)).

The undisputed facts here show that Defendants Saddler and Omicron cannot satisfy either the second or third elements. Defendants cannot satisfy the third element, because (for all of the reasons discussed above) they cannot show either that the Policy as written insures against

the claims in the PJP lawsuit or that the Policy should be reformed to provide such coverage. Defendants also cannot satisfy the second element, because the undisputed facts show that no premium was ever paid for the Policy by Omicron or Saddler. "Missouri law is clear—the nonpayment of an insurance premium voids the policy." *Wright*, 380 S.W.3d at 11 (citing *Blair by Snider v. Perry County Mut. Ins. Co.*, 118 S.W.3d 605, 607 (Mo. 2003), and *Shelter Mut. Ins. Co. v. Flint*, 837 S.W.2d 524, 531 (Mo. Ct. App. 1992)). Although Defendants wrote a check for payment of the Policy premium, the check was returned for insufficient funds. Where the party purporting to be insured delivers a premium payment by check and the check is returned for insufficient funds, the payment of premium element is not satisfied. *See id.* (granting summary judgment in favor of insurer where the plaintiff wrote a check to the insurer for the premium but the check was returned for insufficient funds).

Because the undisputed facts show that Defendants cannot establish two of the elements of their breach of contract claim, Country Mutual is entitled to summary judgment on this claim.

### D. Defendants' Counterclaim for Breach of Oral Contract of Insurance (Count IV)

In Count IV of their Counterclaim, Defendants allege that by refusing to provide a defense and indemnity to Defendants with regard to the PJP lawsuit, Country Mutual breached an oral contract of insurance. The elements of an oral contract of insurance are as follows: "'First, the subject-matter; second, the risk insured against; third, the amount; fourth, the duration of the risk; and fifth, the premium.'" *Lagermann v. Farm Bureau Town & Country Ins. Co.*, 356 S.W.3d 780, 784-85 (Mo. Ct. App. 2011) (quoting *Chailand v. M.F.A. Mut. Ins. Co.*, 375 S.W.2d 78, 81 (Mo. 1964)). It is essential that "the minds of the parties shall have met on all essential terms of the contract." *Chailland*, 375 S.W.2d at 81.

Defendants allege in their counterclaim that they entered into an oral contract with Country Mutual in July 2012 for a professional liability or errors and omissions policy, with the risk insured against being "any claims made against defendants arising out of defendants' rendering of professional services to clients." (Doc. 8, ¶¶ 25-27). However, Defendants provide no evidence of this oral contract. As discussed above with respect to Defendants' reformation counterclaim, the uncontroverted affidavit of Ms. Husbands states that she expressly told Saddler that she could not obtain professional liability insurance or errors and omissions insurance for Defendants, and the application they signed did not include a request for professional liability insurance. (Doc. 51-3, at p. 2).

This undisputed evidence shows that Saddler and Ms. Husbands never had a "meeting of the minds" in which they agreed that Country Mutual would provide professional liability coverage that would have included coverage for the allegations in the PJP lawsuit. Therefore, Defendants cannot establish the existence of an oral contract that obligates Country Mutual to provide such coverage, and Country Mutual is entitled to summary judgment on the claim that it breached such an oral contract.

### E. Defendants' Counterclaims for Vexatious Refusal to Pay (Count III and V)

In Counts III and V, Defendants allege claims of vexatious refusal to pay under the written and oral contracts of insurance. To establish a claim for vexatious refusal to pay, Defendants must prove (1) that they had an insurance policy with Country Mutual; (2) that Country Mutual refused to pay; and (3) that Country Mutual's refusal was without reasonable cause or excuse. *Dhyne v. State Farm Fire & Cas. Co.*, 188 S.W.3d 454, 457 (Mo. 2006) (citing Mo. Rev. Stat. § 375.420). There is no vexatious refusal "where the insurer has reasonable cause to believe and does believe there is no liability under its policy and it has a meritorious defense."

*Doe Run Resources Corp. v. Certain Underwriters at Lloyd's London*, 400 S.W.3d 463, 471 (Mo. Ct. App. 2013).

Here, for all of the reasons discussed above, the Policy does not require Country Mutual to provide a defense or indemnity to Defendants with regard to the allegations in the PJP lawsuit, nor is there any oral contract that requires Country Mutual to do so. Thus, Defendants cannot establish that Country Mutual's refusal to pay was "without reasonable cause or excuse," and Country Mutual is entitled to summary judgment on Counts III and V of the Counterclaim.

### F. Defendants' Counterclaim for Negligent Failure to Procure Insurance (Count VI)

In Count VI, Defendants allege that Ms. Husbands agreed to procure for them a professional liability/errors and omissions policy through Country Mutual and negligently failed to do so. "To prevail on a claim of negligent failure to procure insurance, the plaintiff must plead and prove that (1) the agent agreed to procure, for compensation, insurance from the insurance company, (2) the agent failed to procure the agreed upon insurance and, in so doing, failed to exercise reasonable care and diligence, and (3) as a result, the plaintiff suffered damages." *Busey Truck Equip., Inc. v. Am. Family Mut. Ins. Co.*, 299 S.W.3d 735, 739 (Mo. Ct. App. 2009). As discussed above with respect to Defendants' counterclaims for reformation and breach of oral contract of insurance, the uncontroverted evidence shows that Ms. Husbands expressly told Saddler that Country Mutual could not provide Defendants with a professional liability/errors and omissions policy and that Defendants applied for a policy that did not include professional liability/errors and omissions coverage. Therefore, Defendants cannot establish that Ms. Husbands agreed to procure a professional liability/errors and omissions policy and then negligently failed to do so. Because the undisputed evidence shows that Defendants cannot

establish the first two elements of the claim, Country Mutual is entitled to summary judgment on Count VI.

## IV.    CONCLUSION

For all of the reasons stated above, Country Mutual has established that it is entitled to judgment as a matter of law. The undisputed facts and controlling Missouri law establish that Defendants are not entitled to defense or indemnity under the Policy with respect to the PJP lawsuit and that Defendants cannot establish the elements of any of their six counterclaims. Accordingly,

**IT IS HEREBY ORDERED** that Country Mutual's Motion for Summary Judgment (Doc. 51) is **GRANTED**. The Court will issue a separate judgment consistent with this Memorandum and Order.

/s/Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of April, 2015.